Lund v. Salt Lake County, 58 Utah 546

# LUND v. SALT LAKE COUNTY.

No. 3616.    Decided July 18, 1921.    Rehearing Denied August 22,
1921.    (200 Pac. 510.)

1.  EMINENT DOMAIN—CONSTITUTIONAL PROVISIONS AUTHORIZING
    COMPENSATION FOR TAKING OR DAMAGING PROPERTY NOT APPLIC-
    ABLE TO INJURIES COGNIZABLE AT COMMON LAW OR IN EQUITY.
    Injuries cognizable at common law or in equity are ordinarily
    not covered by constitutional provisions authorizing compen-
    sation for taking or damaging property.

2.  EMINENT DOMAIN—PROPERTY TOTALLY DESTROYED OR RENDERED
    VALUELESS IS "TAKEN," WITHIN CONSTITUTIONAL PROVISION AS
    TO EMINENT DOMAIN.    Property which is totally destroyed or
    rendered valueless is "taken," within Const. art. 1, § 22, pro-
    viding that private property shall not be "taken" or damaged
    for public use without just compensation.

3.  EMINENT DOMAIN—DAMAGES TO ENTITLE OWNER TO COMPENSA-
    TION MUST BE THE DIRECT RESULT OF THE EXERCISE OF RIGHT OF
    EMINENT DOMAIN.    Damages to property to entitle owner to
    compensation under Const. art. 1, § 22, providing that private
    property shall not be taken or damaged for public use without
    compensation, must be the direct consequence of the lawful
    exercise of the right of eminent domain.

4.  EMINENT DOMAIN—COUNTY NOT LIABLE FOR DESTRUCTION OF FISH
    IN FISHPONDS FROM IMPURE WATER FROM WATER SUPPLY RESER-
    VOIR.    Owner of fishponds could not recover from county for
    destruction of fish by impure water allowed to flow into fish-
    ponds from reservoir maintained by the county in connection
    with its water supply system, following the flushing of such
    reservoir, on the theory that owner was entitled to compensa-
    tion therefor under Const. art. 1, § 22, providing that private
    property shall not be taken or damaged for public use without
    just compensation, such damages not being the direct conse-
    quences of the exercise of the right of eminent domain, and
    not being unavoidable (citing Words and Phrases, First and
    Second Series, Eminent Domain).[1]

5.  COUNTIES—NOT LIABLE FOR DESTRUCTION OF FISH IN FISHPONDS
    FROM IMPURE WATER FROM RESERVOIR ON THEORY OF NUISANCE.
    A county was not liable for destruction of fish in fish ponds

[1] *Morris* v. *Railroad*, 36 Utah, 14, 102 Pac. 629, and *O'Neill* v.
*Railroad*, 38 Utah, 475, 114 Pac. 127.

from impure water allowed to flow therein from reservoir maintained by the county in connection with its water supply system, following the flushing of the reservoir, on the theory of a nuisance, such damage not being within the contemplation of the county in cleaning the reservoir.

6. MUNICIPAL CORPORATIONS—[LIABLE FOR NEGLIGENCE IN PROSECUTION OF PRIVATE BUSINESS ONLY IF BUSINESS WAS AUTHORIZED BY CHARTER. A municipal corporation engaging in a private business is liable for negligence in the prosecution of such business only if it was authorized by its charter to engage therein, and is not liable if it was not authorized to engage in private business, regardless of whether the business was profitable, unless some principle of estoppel is involved.[2]

7. COUNTIES—NOT LIABLE FOR NEGLIGENCE IN MAINTENANCE OF WATER SUPPLY SYSTEM AS PRIVATE ENTERPRISE NOT AUTHORIZED BY STATUTE. Salt Lake County held not liable for negligence in maintenance of water supply system, regardless of whether it engaged in such business as a private enterprise, since it had no authority to enter into such private business, under Comp. Laws 1907, § 511, subds. 30, 40, 42, 48 (Comp. Laws 1917, §§ 1360, 1363, 2785, 2791).

8. PLEADING—PLAINTIFF SHOULD NOT COMPLAIN OF ONE ALLEGED WRONG IN SEPARATE CAUSES OF ACTION. Plaintiff should not state separate causes of action for one alleged wrong, but should state the facts in one cause of action, and leave the matter of determining upon what particular principle of law he is entitled to recover to the court.

9. PLEADING—PLAINTIFF SHOULD AVOID PROLIXITY. In pleading a cause of action, plaintiff should avoid prolixity, and should seek perspicuity and simplicity.

Appeal from District Court, Third District, Salt Lake County; *P. C. Evans*, Judge.

Action by Carl R. Lund against Salt Lake County. Judgment of dismissal, and plaintiff appeals.

AFFIRMED.

---

[2] *Brown* v. *Salt Lake City*, 33 Utah, 222, 93 Pac. 570, 14 L. R. A. (N. S.) 619, 126 Am. St. Rep. 828, 14 Ann. Cas. 1004; *Royce* v. *Salt Lake City*, 15 Utah, 401, 49 Pac. 290.

*J. E. Darmer* and *S. P. Armstrong,* both of Salt Lake City, for appellant.

*A. E. Moreton,* Co. Atty., of Salt Lake City, for respondent.

THURMAN, J.

This is an action to recover damages for injury to certain fish ponds and destruction of fish contained therein situated in Salt Lake County, Utah. The defendant demurred to the complaint. The trial court sustained the demurrer. Plaintiff elected to stand on his complaint, and an order was made dismissing the action. Judgment was entered accordingly, from which judgment plaintiff appeals.

Three causes of action are alleged: (1) For taking and damaging property for a public use; (2) for a nuisance by which plaintiff's property was injured and destroyed; (3) for negligent acts and omissions on the part of defendant in handling and controlling certain waters for public use, and in its proprietary capacity for hire.

The first cause of action, as far as material to the issues involved, alleges in substance the corporate capacity of defendant; that during the months of July and August, 1916, and at all times alleged in the complaint, plaintiff was and is now lawfully possessed and the rightful occupant of certain lands consisting of about 5 acres, minutely described, upon which he had constructed at great expense certain trout ponds, consisting of 10 in number, of various sizes and dimensions ranging in depth from 4 to 8 feet, connected by ditches and conduits so as to cause a flow of water through said ponds. The ponds and their relations to each other, together with the manner of their construction, are described with great particularity. It is then alleged that during all of said times plaintiff was and had been engaged in the breeding and raising of trout for market, and that said ponds were especially prepared for that purpose; that plaintiff's dependence for water to supply said ponds was the water of certain natural springs, conveyed by ditches or conduits into said ponds;

that on and prior to July 21, 1916, said ponds, by the means aforesaid, had been supplied with pure, clear, cold water, well adapted to the breeding and raising of trout, and were at said time stocked with growing trout ready for market, and in course of growth and development. The complaint minutely describes the number, size, and value of the different classes of fish ready for market and in progress of development, aggregating in value the sum of $6,583.50. In addition thereto it is alleged that plaintiff owned 675 spawners of the reasonable value of $5 each, which constituted his capital in said business, of the total value of $3,375; that said spawners and growing trout were all in good, healthy condition; that the total reasonable net value of all said fish was the sum of $9,700.

Plaintiff further alleges that at all the times mentioned said defendant operated and controlled a water system, by which it supplied with water the county infirmary, maintained by said defendant, primarily and mainly for the care of its dependent poor, and secondarily for the furnishing of a supply to other persons for compensation; that said defendant also, by and through its said water system, supplies, and did at the time mentioned supply, the inhabitants of that vicinity with water for hire, and that connected with and as part of said water system said defendant operated and controlled a certain reservoir situated northeasterly from said fishponds, constructed and maintained on the hillside at a greater elevation; that from said reservoir water was and is conveyed by a pipe to said infirmary and to the water system supplying the residents in the vicinity thereof; that from said reservoir there is and was at all times also a water ditch, leading southwesterly down said hill, which carried and still carries surplus and overflow water from said reservoir into said ditches which supply and did supply water from said natural springs to plaintiff's said fishponds; that defendant is the owner or tenant of the freehold of the lands upon which defendant maintains said infirmary, reservoir, and pipe line, and the water ditch carrying said surplus and overflow water from its said reservoir—all connected with and part of its said in-

firmary and water system; that said defendant was operating and controlling said reservoir and water system, and furnishing water to its said infirmary and to certain neighboring residents for hire as aforesaid, from about the 21st day of July to the 5th day of August, 1916, and for the purpose of cleansing its said reservoir, by means of large streams and quantities of water did flush said reservoir, and did bring and cause to flow into said reservoir large quantities of water not naturally flowing therein, but brought by said defendant from outside sources, and said defendant did cause, suffer, and permit large quantities of water carrying large quantities of foul sediment to flow from said reservoir, and did, without the consent and against the protest of plaintiff, suffer and permit the same to escape therefrom into said water ditch in such volume that said ditch was unable to carry the same, and caused the same and the greatly increased flow of water to overflow and escape from said ditch onto the adjoining land, and to flow through stable manure spread thereon, from which said overflow water extracted certain substances and poisons, and said overflow water also contains poisonous sediment and substances from said reservoir, and said waters were contaminated, foul, and polluted, and were deleterious, destructive, and fatal to plaintiff's fish, and said waters, so brought by defendant into its said reservoir, and so suffered and permitted by said defendant to escape therefrom into plaintiff's said fish preserve, carrying said poisonous sediment from said reservoir and said poisons extracted as aforesaid from said manure, were unfit for use, and when merged with the waters of said ponds, and as the proximate cause thereof, destroyed the health and life of plaintiff's trout in said ponds, and in consequence thereof said trout were made sick, prevented from spawning, and were destroyed; that plaintiff lost all of said fish except approximately 1,760 growing trout and 40 old spawners, rendered barren by said poison waters, of the reasonable value of $230; that plaintiff lost all his income and profits which he otherwise would have received. It is then alleged in the complaint that plaintiff's fishponds were greatly damaged by the deposit of poisonous sediment therein,

causing him great expense in repairing said ponds, his total expense and damage aggregating the sum of $9,570, for which sum he prays judgment; that plaintiff seasonably presented to defendant his claim for said damages, duly verified, but the same was disallowed.

For a second cause of action plaintiff alleges substantially the same facts as in the first cause of action, and demands the same relief, on the grounds that the acts and omissions complained of constituted a nuisance.

In the third cause of action the same acts and omissions are repeated, with the additional allegation that the defendant was negligent in respect to.the matter charged, and upon that ground plaintiff demands the same relief.

Defendant demurs to the complaint and each alleged cause of action therein, upon the ground that it fails to state facts sufficient to constitute a cause of action, and upon the further ground that it is uncertain and unintelligible in certain alleged respects.

While the complaint is subject to the criticism that it is unduly verbose, especially in the paragraphs which allege the wrongs complained of, it is nevertheless sufficiently certain to show the grounds upon which plaintiff demands relief. Whether the facts alleged constitute a cause of action, in our opinion, presents the only question to be determined.

In support of his first cause of action plaintiff bases his right of recovery upon article 1, § 22, of the Utah Constitution, which provides that "private property shall not be taken or damaged for public use without just compensation." The fact that the reservoir which was being cleansed when the alleged injury occurred belonged to the defendant, and was being devoted to a public use, is made the basis of this contention. In other words, plaintiff invokes the constitutional guaranty which is invariably coupled with the exercise of the right of eminent domain.

A statement of the commonly accepted meaning of the term "eminent domain," as understood in jurisprudence may be illuminating in this connection:

"Eminent domain is the rightful authority which exists in every

sovereignty to control and regulate those rights of a public nature which appertain to its citizens in common, and to appropriate and control individual property for the public benefit as the public safety, necessity, convenience, or welfare may demand.

"Eminent domain is the right of a government to take and appropriate private property to public use whenever the exigency requires it.

"Eminent domain embraces only cases where, by the authority of the state, and for public good, the property of the individual is taken without his consent for the purpose of being devoted to some particular use."

The foregoing definitions are found in Words and Phrases, First Series, vol. 3, at page 2362. Other paragraphs in the same connection are equally pertinent and comprehensive.

The kinds of property subject to the right, in the very nature of things, is practically unlimited. A distinguished authority on constitutional law states the principle as follows:

"Eveery species of property which the public needs may require, and which government cannot lawfully appropriate under any other right, is subject to be seized and appropriated under the right of eminent domain; lands for the public ways; timber, stone, and gravel with which to make or improve the public ways; buildings standing in the way of contemplated improvements, or which for any other reason it becomes necessary to take, remove, or destroy for the public good; streams of water; corporate franchises; and, generally, it may be said, legal and equitable rights of every description—are liable to be thus appropriated." Cooley, Const. Limitations (6th Ed.) p. 646.

Bearing in mind the foregoing definitions, and the nature of the purposes for which private property may be taken or damaged for public use, it becomes our duty to determine whether or not the injury to plaintiff's property alleged in the complaint comes within the law regulating the exercise of eminent domain; in other words, whether it comes within the guaranty of the constitutional provision upon which plaintiff relies. It certainly will not be contended that every destruction of property or injury thereto by public officers in the discharge of governmental functions is covered by the constitutional guaranty. Injuries cognizable at common law or in equity are ordinarily not covered by constitutional provisions authorizing compensation for

taking or damaging property. If they were, there would be no necessity for such provisions. Counsel for appellant have not called our attention to any adjudicated case that supports their contention when the case is read in the light of fundamental principles. If the property is taken, it must be for a public use within the principle announced in the excerpts heretofore quoted. , The question is, Were plaintiff's fish taken for a public use? If so, to what public use were they devoted? Were his fishponds taken for a public use? If so, to what use were they devoted? It must be conceded that plaintiff's property was not taken for a public use within the meaning and contemplation of article 1, § 22, of the state Constitution.

But, if not taken for a public use, it may be contended that they were destroyed for a public use. Again the question is pertinent, For what public use were they destroyed? What public use was subserved or benefited by plaintiff's fish being destroyed, or his fishponds being injured? We can conceive of instances in which private property may be destroyed or injured for a public use. If totally destroyed or rendered valueless, it amounts to a taking within the meaning of the Constitution. U. S. v. Lynah, 188 U. S. 445, 23 Sup. Ct. 349, 47 L. Ed. 539, cited by plaintiff, is a case in point. The principle is stated in the fourth headnote of the case:

"Where the government of the United States, by the construction of a dam, or other public works, so flooded land belonging to an individual as to totally destroy its value, there is a taking of private property within the scope of the Fifth Amendment."

That was a case in which the government of the United States, in the exercise of its powers of eminent domain and regulation of commerce, under the authority of acts of Congress, by its officers and agents, placed dams and other obstructions in the Savannah river in such manner as to cause the water to overflow the plaintiff's land, and render it valueless. The dams and other obstructions were permanent structures, and the injury to the land, which amounted to a total destruction of its value, was also permanent. Here was undoubtedly a taking of private property for a public use, and

a public use was subserved thereby. Not only that, the destruction of plaintiff's property was a necessary consequence of the works constructed by the government, and must have been within its contemplation.

Counsel for appellant have cited no case more apt or pertinent to illustrate the distinction between cases within the principle of eminent domain and the case alleged in plaintiff's complaint.. To the same effect is *Pumpelly* v. *Green Bay Co.,* 13 Wall. 166, 20 L. Ed. 557.

The Constitution of the United States does not in terms provide for compensation in cases where private property is merely damaged for public use, but only where it is taken for such purpose. In that respect it differs from the Utah Constitution, to which reference has been made. But let us suppose that the federal Constitution had provided compensation for damaging, as well as for taking, private property, and suppose further that in *U. S.* v. *Lynah,* supra, the damage caused to plaintiff's land by the overflow of the river had been such as to only diminish its value, instead of totally destroying it, the principle would, nevertheless, have been the same; the damage would clearly have been for a public use, and the plaintiff would have been entitled to compensation to the extent of his damage, and that, too, within the guaranty of the Constitution.

Such is declared to be the rule in *Chicago* v. *Taylor,* 125 U. S. 161, 8 Sup. Ct. 820, 31 L. Ed. 638, a case arising under the Constitution of Illinois, in which the provision for compensation in the exercise of eminent domain is the same as ours. The action was to recover damages sustained by reason of the construction by defendant city of a viaduct in the immediate vicinity of plaintiff's premises. The defendant did the work under a power conferred by its charter and special ordinance authorizing the structure. Verdict was rendered for plaintiff, and the city appealed. The case finally reached the federal Supreme Court, where the judgment for plaintiff was affirmed. It is a typical case of damage to property for a public use. The question of "taking property" was not involved. There was no physical interference with the prop-

erty or attempt to exercise dominion over it. It was simply a question of depreciation of value on account of access to the property being more or less obstructed.

Here, again, is exemplified the fundamental principle upon which compensation is allowed in exercising the powers of eminent domain. The structure or work causing the injury was for a public purpose. It was author- 2 ized by law, and the damage for which compensation was claimed was a necessary consequence of the work of construction.

One of the cases cited by plaintiff's counsel most favorable to their contention is that of *Wendell* v. *Spokane County*, 27 Wash. 121, 67 Pac. 576, 91 Am. St. Rep. 825. In that case the county commissioners ordered a county roadway surveyed, laid out, established, and built, a portion of which ran through a certain lake. They took a portion of the bed of the lake for the purpose of building the road, and ordered a canal or ditch to be cut out of the lake between the roadbed and plaintiff's land. The ditch was cut through a natural ridge of land that had theretofore protected plaintiff's land from the overflow of the lake. The ditch emptied the water onto plaintiff's land, inflicting the damage complained of. The foregoing facts were alleged in the complaint. Defendant demurred, and the demurrer was sustained. Plaintiff appealed, and the judgment was reversed.

The opening sentence of the opinion of the court states clearly the distinction between that case and the case at bar. The sentence reads:

"This is an action for damages caused by draining the waters of a lake in Spokane county onto the lands of the plaintiffs, *done by order of the board of county commissioners* in constructing a road across said lake." (Italics ours.)

There can be no dispute but that here was an exercise of the power of eminent domain. The work was done exactly as ordered, and the consequences must have been contemplated by the commissioners when they ordered the work. It is perfectly consistent with the fundamental principle to which reference has been made heretofore to hold that the

facts of the case just reviewed bring it within the constitutional provision authorizing compensation for damages.

If we correctly interpret the meaning of counsel's argument on behalf of appellant, they admit that this court, in *Morris* v. *Railroad,* 36 Utah, 14, 102 Pac. 629, held, in effect, that that case came within the provisions of article 1, § 22, of the state Constitution, only because the damages claimed were the "direct, necessary, and unavoidable consequences of the condemnation itself." The language just quoted is the language of counsel, and not the language of the court. The writer, however, feels justified in assuming that the interpretation made by counsel correctly reflects the court's opinion.

The action was brought by an abutting owner on a public street for damages resulting from the construction and operation of a railroad thereon. Depreciation of value on account of ingress and egress to and from his property being obstructed by trains and engines constituted the basis of plaintiff's action. It was not a case of negligence. It was a case of unavoidable injury to an abutting owner, resulting from the proper construction and operation of a railroad on a public street. To the same effect is *O'Neill* v. *Railroad,* 38 Utah, 475, 114 Pac. 127.

While counsel for appellant, in effect, admit that the holding of the court in the Utah cases above referred to is against their contention, they do not admit that such holding is correct. We are inclined to the view that the court acted advisedly in holding as it did, and in support of that view we refer the reader to the elaborate brief of counsel filed in the case, in which more than 100 cases are cited construing Constitutions and statutes relating to the exercise of eminent domain in various states of the Union.

We are clearly of the opinion that the damages for which compensation is allowed under article 1, § 22, of the state Constitution are such as are the direct conse-    3 quences of the lawful exercise of the right of eminent domain, and that ordinarily such damages are unavoidable.

It follows, therefore, that the demurrer to plaintiff's first cause of action was properly sustained.

Plaintiff, in his second cause of action, alleges that the acts complained of constituted a nuisance, and on that ground bases his right of recovery. It is somewhat    4. difficult to comprehend under our system of pleading what difference it makes whether the action is called by one name or another. After all the test is, What relief, if any, is the plaintiff entitled to under the facts alleged in the complaint?

Counsel for plaintiff admit in their brief that—

"A suit for damages founded on injury caused by a nuisance is governed by much the same legal principle as a suit founded on the Constitution."

The cases they cite in discussing the validity of plaintiff's second cause of action exemplify the truth of their admission. In fact, by far the greater portion of the cases cited in which a county or other municipal corporation is sued for damages are cases in which the plaintiffs might well have based their actions upon the constitutional provision providing compensation for damaging private property for public use. Many of the decisions expressly refer to the constitutional provision as controlling. In practically every case, as far as we have had opportunity to investigate, the injury complained of was the direct, necessary, and, oftentimes, unavoidable consequence of the exercise of the power of the municipality in connection with a public use. In some cases negligence is made the basis of the action, but it is quite generally held that negligence is not an essential element.

It would be impracticable to cite, much less review and distinguish, all the cases to which counsel have called our attention, nor is it necessary so to do. The following cases are fair examples of the authority upon which they rely: *Oklahoma City* v. *Vetter* (Okl.) 179 Pac. 473, 4 A. L. R. 1009; *Wendel* v. *Spokane County*, 27 Wash. 121, 67 Pac. 576, 91 Am. St. Rep. 825; *Chester* v. *Brower*, 117 Pa. 647, 12 Atl. 577, 2 Am. St. Rep. 713; *Guest* v. *Church Hill*, 90 Md. 689, 45 Atl. 882; *Langley* v. *Augusta*, 118 Ga. 590, 45 S. E. 486,

98 Am. St. Rep. 133; *Wigel* v. *Parkersburg,* 74 W. Va. 25, 82 S. E. 554, 52 L. R. A. (N. S.) 465; *Raney* v. *Hinds Co.,* 115 La. 1, 38 South. 875; 19 R. C. L. p. 1084, § 371, p. 1086, § 372; 28 Cyc. 1329, note 45; *Kobs* v. *Minneapolis,* 22 Minn. 159; *O'Brien* v. *St. Paul,* 18 Minn. 176 (Gil. 163); *City of Dixon* v. *Baker,* 65 Ill. 518, 16 Am. Rep. 591; 27 Cyc. 1327; *Crawfordsville* v. *Bond,* 96 Ind. 236; *Arn* v. *City of Kansas* (C. C.) 14 Fed. 236; *Valparaiso* v. *Kyes,* 30 Ind. App. 447, 66 N. E. 175; *Town of Norman* v. *Ince,* 8 Okl. 412, 58 Pac. 632.

Most of the cases cited were actions for damages by abutting owners on public streets for some character of injury caused by improving the streets. Other cases were where the work done by the municipality caused water or sewage to be cast or emptied directly on plaintiff's land. A few of them were for erecting and operating hospitals for the treatment of contagious diseases in the immediate vicinity of residence property. Others were for depositing filth and garbage in close proximity to plaintiff's premises, and some we are unable to classify, but they are of no special significance in determining the question before the court.

Not a single case has been cited on behalf of appellant in which the injury alleged was so indirect, remote, and in that sense so inconsequential, as the injury alleged in the case at bar. It is not contended in the present case, nor does it appear from the language of the complaint, that the alleged injury could by any possibility have been within the contemplation of the defendant or those engaged in cleaning the reservoir. On the other hand, the injury must have been entirely unexpected, although due perhaps to some negligence on the part of those engaged in the work in not providing a ditch of sufficient capacity to take care of the surplus water. We are not prepared to go to the extent of holding that such a state of facts constitutes a nuisance for which damages, irrespective of negligence, may be recovered.

The court did not err in sustaining the demurrer to plaintiff's second alleged cause of action.

In the third alleged cause of action plaintiff bases his right
to recover on the grounds alleged in counsel's brief as follows:

"The county was acting in a corporate or private enterprise,
from which it derived an income from its waterworks. The em-
ployés of the county were negligent in permitting the ditches to
become choked and dammed up, and in throwing large quantities
of poisonous water into the ditch, and in failing to strengthen and
increase the capacity of the ditch, and in permitting the water to
overflow and gather poison from the manure, and then to flow into
said fishponds carrying said poisons."

It is contended that the county acts as an arm of the state,
and also in a private capacity. In this connection plaintiff
relies on the following statutes:   Comp. Laws Utah 1917,
§§ 1360, 1363; also Comp. Laws Utah 1907, § 511, subds. 30,
40, 42 and 48.   These statutes declare that counties are bodies
politic and corporate, with such powers as are prescribed by
statute or necessarily implied; that they have power to sue
and be sued; to purchase and hold such real and personal
property, including water rights, as is necessary and proper
for county purposes; to make such contracts as are necessary
to the exercise of its powers; to manage and dispose of its
property as the interests of the inhabitants may require; to
provide for the care, maintenance, and relief of the indigent,
sick, and dependent poor; to erect hospitals, poor houses, or
such other institutions as may be necessary; to provide a farm
in connection with the county hospital, infirmary, or poor
house, and to make necessary rules and regulations for gov-
erning the same.   Plaintiff also relies on Comp. Laws Utah
1917, § 2785, providing that the privileges of the county hos-
pital may be extended to persons residing outside the county
upon such terms as the board of commissioners may by its
rules and regulations prescribe.   Also section 2791, same com-
pilation, conferring power on said board to fix such rates
for treatment of patients able to assist themselves as may be
deemed right and equitable.

It goes without saying that the foregoing statement of the
nature, purpose, and powers of the county organizations, as
prescribed by the sections of the statutes referred to, is only
an abridgment.   We have endeavored, however, to specifically

indicate the special features upon which appellant relies in support of his contention that the county acts in a private or corporate capacity, as well as in a governmental capacity, or as an arm of the state.

In support of the validity of plaintiff's alleged third cause of action, counsel do not contend that the county, when acting in a governmental capacity, would be liable for the negligence of its officers or agents for any injury occasioned by their negligence; hence it is not necessary to invoke the doctrine maintained with practical unanimity in nearly every jurisdiction of the country to the effect that municipal corporations, especially county organizations, are not liable in such cases unless made so by express statute. The brief of respondent's counsel, filed in the case, upon this point is voluminous and conclusive.

Inasmuch, however, as it is alleged in the complaint that the county is engaged in supplying water for hire to persons residing in the neighborhood of the infirmary, plaintiff contends that the rule of respondeat superior applies, and that the county is liable for the negligence of its employés. Many of the cases cited by counsel upon this point lend support to such contention. *Brown* v. *Salt Lake City*, 33 Utah, 222, 93 Pac. 570, 14 L. R. A. (N. S.) 619, 126 Am. St. Rep. 828, 14 Ann. Cas. 1004; *Bailey* v. *N. Y. City*, 3 Hill (N. Y.) 531, 38 Am. Dec. 669; *Little* v. *Holyoke*, 177 Mass. 114, 58 N. E. 170, 52 L. R. A. 417; *Oliver* v. *Worcester*, 102 Mass. 499, 3 Am. Rep. 485; *Wigal* v. *Parkersburg*, 74 W. Va. 25, 81 S. E. 554, 52 L. R. A. (N. S.) 465; *Western Sav. Fund* v. *Phila.*, 31 Pa. 183, 72 Am. Dec. 730; *Wagner* v. *Rock Island*, 146 Ill. 139, 34 N. E. 545, 21 L. R. A. 519; *Esberg* v. *Portland*, 34 Or. 282, 55 Pac. 961, 43 L. R. A. 435, 75 Am. St. Rep. 651; *Piper* v. *Madison*, 140 Wis. 311, 122 N. W. 730, 25 L. R. A. (N. S.) 239, and note, 245, 133 Am. St. Rep. 1078; *Wallace* v. *Muscatine*, 4 G. Greene (Iowa) 373, 61 Am. Dec. 131; *Templin* v. *Iowa City*, 14 Iowa, 59, 81 Am. Dec. 455; *Denver* v. *Davis*, 37 Colo. 370, 86 Pac. 1027, 6 L. R. A. (N. S.) 1013, 119 Am. St. Rep. 293, 11 Ann. Cas. 187; *New Castle* v. *Harvey*, 54 Ind. App. 243, 102 N. E. 878; 19 R. C. L. p. 1123,

§ 401, p. 1112, § 392, p.1125, § 403; 7 R. C. L. pp. 924 and 958.

We have not before us the statutes conferring power upon the various municipal corporations involved in the cases referred to, and therefore we are unable to determine whether or not such municipalities kept within their charter powers in engaging in private or corporate business. It seems to us that in determining the value of these cases as precedents everything depends upon that consideration. If they were authorized to engage in such business, as was Salt Lake City in the Brown Case, cited by plaintiff, we see no objection to applying the common-law doctrine of respondeat superior, and holding the municipality liable. On the other hand, if they were entirely without authority to engage **6** in private business we do not understand upon what principle they could be held liable, whether the business was profitable or not, unless some principle of estoppel was involved.

In Reese on Ultra Vires, § 170, the doctrine is stated as follows:

"Municipal corporations can exercise only such powers as are expressly granted to them, or such as are necessary to carry into effect those that are granted. No powers can be implied except such as are essential to the objects and purposes of the corporation as created and established. To the extent of their authority they can bind the people and the property subject to their regulation and governmental control by what they do, but beyond their corporate powers their acts are of no effect."

In 28 Cyc., at page 1277, it is said:

"A municipal corporation cannot confer upon its agents or officers lawful authority to represent it beyond the scope of its charter powers, and therefore is not civilly liable for damages suffered by individuals, in person or property, which are caused by the tortious acts of municipal agents or officers assuming to represent it in matters wholly ultra vires, whether such acts are directed by the corporation or are done without express direction or corporate sanction."

The note referred to in the text cites cases from 22 states of the Union, including Utah. It also cites cases from the United States courts and from Canada. In *Royce* v. *Salt*

*Lake City,* 15 Utah, 401, at page 408, 49 Pac. 290, 292, the case referred to in the note to the excerpt quoted from Cyc., the rule is tersely stated in the court's opinion:

"It may safely be asserted that torts or wrongful acts of an agent or officer of a municipal corporation, not resting upon contract, but which are 'ultra vires,' in the proper sense and meaning of the term, will not create any implied liability on the part of the corporation. 2 Dill. Mun. Corp. § 969."

The doctrine seems to be elementary. The authorities we have cited are under the head of municipal corporations, which term ordinarily refers to incorporated cities. If such is the rule which applies to incorporated cities, a fortiori it should apply to county organizations the powers of which are usually more restricted. McQuillan, Mun. Corp., vol. 6, § 2605.

This brings us to the question upon which the final issue must be determined. What power or authority had Salt Lake county to engage in the business of furnishing its inhabitants with water for hire? What provision of the statute justifies this assumption of power? The authority does not appear in any of the sections to which counsel have invited our attention, and we have not been able to find it in any other section, and hence conclude that the power does not exist. It is conceivable that such a power might be exercised to a limited extent under certain circumstances and conditions (*Muir v. Murray City,* 55 Utah 368, 186 Pac. 433; 19 R. C. L. p. 788); but no such circumstances or conditions appear in the instant case. Even if such conditions existed, and the power was exercised, the revenue derived therefrom would be purely incidental. In such circumstances we know of no reason why plaintiff's right to recover damages should be any different from what it is in the case as it now stands. *Curran* v. *City of Boston,* 151 Mass. 505, 24 N. E. 781, 8 L. R. A. 243, 21 Am. St. Rep. 465, cited with approval in *Royce* v. *Salt Lake City,* to which reference has been made.

For the reasons stated it becomes our duty to affirm the judgment of the trial court. Before concluding, however, there is one matter connected with the case that deserves at least a passing notice. We fully appreciate the solicitude of

counsel in the preparation of pleadings and their desire to present their cause of action or defense in such manner as to obtain the relief or benefit to which they think their client is entitled. For this purpose, the exercise of a superabundance of caution is at least pardonable, if not always commendable. We feel, however, that it is the duty of both court and counsel, in the discharge of their respective functions, to at all times endeavor to carry out the spirit of the "re- **8, 9** formed procedure" in the matter of pleading. In the instant case there was not only no necessity for the attempt to state three separate causes of action for one alleged wrong, but in doing so the effect was to increase the burdens of both court and counsel. The wrong complained of could well have been stated in one cause of action, and the matter left to the court to determine upon what particular principle of law, if any, the plaintiff was entitled to relief. Perspicuity and simplicity is the end to be sought. Prolixity should be avoided.

The judgment of the trial court is affirmed, at appellant's cost.

CORFMAN, C. J., and WEBER, GIDEON, and FRICK, JJ., concur.