354 P.2d 105

Arthur W. FAIRCLOUGH, Fred Fairclough, Anthony M. Crus, Thomas Crus, and John Crus, dba Fairclough & Crus, Plaintiffs and Respondents,

v.

SALT LAKE COUNTY, Lamont B. Gundersen, William G. Larson and Edwin Q. Cannon, Sr., Road Commission of Utah, C. Taylor Burton, Francis Feltch, Ernest H. Balch, William J. Smirl and Weston E. Hamilton, Defendants and Appellants.

No. 9140.

Supreme Court of Utah.

July 14, 1960.

Ollie McCulloch, County Atty., Salt Lake City, Walter L. Budge, Atty. Gen., Richard R. Boyle, Asst. Atty. Gen., for appellant.

McBroom. & Hanni, Salt Lake City, for respondent.

HENRIOD, Justice.

Appeal from denial of a motion to dismiss filed by Salt Lake County and the Utah Road Commission. Sovereign im-

munity was claimed as a defense. Reversed.

In November, 1956, defendants completed a highway project where the grade allegedly was reduced about 16 feet below plaintiffs' abutting land. Presumably it was a reasonable and necessary exercise of the police power to benefit the community as a whole.

In June, 1959, two and one-half years later, plaintiffs sued defendants 1) : to get damages for depreciation in preventing access, or, alternatively, 2) : for a writ of mandamus forcing members of the agencies mentioned to start eminent domain proceedings to assess and adjudge damages in their favor.

As to 2), in a case where the same contention was urged, we held it without merit.[1]

As to 1), consistently and historically we have ruled that the State[2] may not be sued without its consent;[3]

1. Springville Banking Co. v. Burton, 1960, 10 Utah 2d 100, 349 P.2d 157.
2. Plaintiffs' brief concedes that action against Salt Lake County or the Road Commission is one against the State.
3. Wilkinson v. State, 1913, 42 Utah 483, 134 P. 626; State by State Road Commission v. Fourth District Court, 1937, 94 Utah 384, 78 P.2d 502; Campbell Bldg. Co. v. State Road Comm., 1937, 95 Utah 242, 70 P.2d 857; Bingham v. Board of Education, 118 Utah 582, 223 P.2d 432; Hjorth v. Whittenburg, 1952, 121 Utah 324, 241 P.2d 907; State v. Tedesco, 1955, 4 Utah 2d 31, 286 P.2d

taken the view that Art. I, Sec. 22 of our Constitution [4] is not self-executing, nor does it give consent to be sued, implied or otherwise; and that to secure such consent is a legislative matter, a principle recognized by the legislature itself.[5] Other states and federal courts have agreed.[6]

In Lynch v. United States, supra, 292 U.S. at pages 580–582, 54 S.Ct. at page 844, Mr. Justice Brandeis, simply and eloquently announced the principle extant here when he said that

"Contracts between individuals or corporations are impaired within the meaning of the Constitution * * * whenever the right to enforce them by legal process is taken away or materially lessened. A different rule prevails in respect to contracts of sovereigns. * * * *The rule that the United States may not be sued without its consent is all-embracing* * * *.

\* \* \* \* \* \*

"\* * * *For consent to sue the United States is a privilege accorded, not the grant of a property right protected by the Fifth Amendment.* The consent may be withdrawn, although given after much deliberation and for a pecuniary consideration. * * * The sovereign's immunity from suit exists *whatever the character of the proceeding or the source of the right sought to be enforced.* It applies alike to causes of action arising under acts of Congress, * * * *and to those arising from some violation of rights conferred upon the citizen by the Constitution, * * *. For immunity from suit is an attribute of* in any suit * * * for the recovery of any property real or personal * * *"); The U. S. Congress has recognized the principle by enacting legislation giving consent to be sued,—which legislation need not be noted here.

---

785; Jopes v. Salt Lake County, 1959, 9 Utah 2d 297, 343 P 2d 728; Springville Banking Co. v. Burton, supra.

4. "Private property shall not be taken or damaged for public use without just compensation."

5. Hjorth v. Whittenburg, supra. It is to be noted that the legislature has permitted suits ex contractu against the Road Commission (Title 27–2–1, Utah Code Annotated 1953), and against the Liquor Commission generally, with the consent of the Governor (Title 32–1–28, Utah Code Annotated 1953), and against the State itself in certain cases involving realty where consent specifically is given to sue (Title 78–11–9, Utah Code Annotated, 1953: "Upon the conditions herein prescribed the consent of the state of Utah is given to be named a party

6. Dougherty v. Vidal, 1933, 37 N.M. 256, 21 P.2d 90; Arkansas State Highway Comm. v. Partain, 1936, 192 Ark. 127, 90 S.W.2d 968; Westmoreland Chemical & Color Co. v. Public Service Comm., 294 Pa. 451, 144 A. 407; Chumbley v. State, 1946, 183 Tenn. 467, 192 S.W. 2d 1007; Lynch v. United States, 1934, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434; Cook v. United States, 6 Cir., 1940, 115 F.2d 463; United States v. Lee, 1882, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171; Vol. 63A Fed.Dig., Actions, ☞125.

*sovereignty which may not be bartered away."* [7] (Emphasis ours)

The Fifth Amendment to the United States Constitution is like Art. I, Sec. 22 of our Constitution, save for the word "damage." By no stretch of the imagination could this alter the principle involved.

Many times we have announced the principle.

In Wilkinson v. State, 1913, 42 Utah at page 492, 134 P. at page 630, where Utah was sued for damages caused by flooding of land by State agents, Art. I, Sec. 22 then operative, Mr. Chief Justice Frick said:

"We have neither a statute nor a constitutional provision authorizing a suit against the state. * * * and in the absence of either express constitutional or statutory authority an action against a sovereign state cannot be maintained * * *."

State by State Road Commission v. Fourth District Court, 1937, supra, 94 Utah at page 389, 78 P.2d at page 504, although conceding that Art. I, Sec. 22 guaranteed that property was not to be taken or damaged for public use without just compensation, nonetheless recognized the rule that statewise:

"The State cannot be sued unless it has given its consent or has waived it immunity * * *."

Repeating, Campbell Bldg. Co. v. State Road Comm., 1937, supra, 95 Utah at pages 249, 252, 70 P.2d at page 861, said:

"This action may not be maintained unless the state has, through legislative or constitutional action, given consent to be sued. * * * and * * * when there is statutory consent to sue, the statute is the measure of the power to sue."

In State v. Tedesco, 1955, supra, 4 Utah 2d at page 38, 286 P.2d at page 789, we continued that:

"* * * the defendant could not sue the sovereign for the damages claimed here, and the State's defense of sovereign immunity is well taken * * *."

In Bingham v. Board of Education, 1950, 118 Utah 582, 223 P.2d 432, where a child

---

7. In Dougherty v. Vidal, supra [37 N.M. 256, 21 P.2d 92]: "A sovereign is exempt from suit * * * on the * * * ground that there can be no legal right as against the authority that makes the law on which the right depends." Mr. Justice Holmes in Kawananakoa v. Polyblank, 205 U.S. 349, 27 S.Ct. 526, 51 L.Ed. 834; in Arkansas State Highway Comm. v. Partain, supra [192 Ark. 127, 90 S.W.2d 970]: "The property owner has no cause of action * * * against the state * * *. If he permits an agency of the state * * * to appropriate his property, he is limited to such relief as the state may provide. For the loss of his property, or for damage to it, which he sustains, this act gives him an unliquidated demand against the state, to be satisfied at the pleasure of the state."

was injured on a schoolground, we held the school board not responsible because of sovereign immunity, as we did very recently in Jopes v. Salt Lake County, where, acting in a governmental capacity, we held the County not answerable for injuries suffered by a stumbling golfer for the same reason.

In a similar case, Hjorth v. Whittenburg, 1952, 121 Utah 324, 330, 241 P.2d 907, 909, where the grade was raised four feet, the doctrine of sovereign immunity espoused by us clearly was enunciated, and contentions urged here equally were answered there in a pronouncement by Mr. Justice Crockett:

> "The argument of plaintiffs' counsel against the injustice to his clients of sovereign immunity is eloquent and persuasive. The remedy is not to be found in imposing an unreasonable and arbitrary burden upon these public officials. This phase of our law is well established and of long standing. If it is to be changed, that must come through the sovereign power of this commonwealth, the people, speaking through the legislature."

He also pointed out that one may not be entirely without redress since he could seek legislative relief under the statutes, given a proper case.

It is not what one might like to do in cases where damage results from a warranted exercise of the police power, but to what extent we are bound under existing law.

Reversed with instructions to grant the motion to dismiss. No costs awarded.

CROCKETT, C. J., and CALLISTER, J., concur.

McDONOUGH, J., concurs in the result.

WADE, Justice (dissenting).

I dissent. There are many reasons why I think this decision is wrong: (1) It may cause grave injustice to plaintiffs. (2) It is contrary to Section 22, Article I of our State Constitution. (3) It is contrary to a number of our decisions, which it does not purport to overrule. (4) In none of the Utah cases relied on in the prevailing opinion was the question of whether Article I, Section 22 is self-executing the determining factor. (5) It is contrary to the great weight of authority and the better-reasoned cases. (6) No good reason is pointed out or even suggested why we should revert to this doctrine of sovereign immunity. I will discuss these points in the order stated above.

(1) Plaintiffs' complaint alleges that they were the owners of all of the land in Upland Terrace. They further allege that said land abuts on the north side of 3900 South Street, which, before the defendants changed the road grade, was the same

422

level as that street, but that between July 3 and Novmber 17, 1956, the defendants lowered the grade of the street to 16 or more feet below the level of plaintiffs' land, thereby destroyed plaintiffs' means of ingress and egress and reduced the number of lots which can be made available in plaintiffs' land, destroying its market value to the extent of $43,000. The plaintiffs ask in the alternative for the damages caused, or for a writ of mandamus requiring defendants to institute an action to assess such damage and require them to pay the same. This appeal is from the trial court's refusal to grant summary judgment dismissing plaintiffs' action.

It is not unreasonable that such change in the level of the adjoining street might cause substantial damages to plaintiffs' property. It has long been recognized in this State that such damages are compensable.[1] If the State had needed an additional narrow strip of plaintiffs' ground in order to make the improvements which it has made, our eminent domain statute would require it to institute a condemnation proceeding in which the jury would be required to assess the resulting damage to plaintiffs' land, including the damages from lowering the level of the street. Yet under this decision, regardless of how great the damages which the change in

the grade of the street might cause the plaintiffs, they have no remedy.

(2) The majority decision in this case is directly contrary to Article I, Section 22, Constitution of Utah, which expressly provides that: "[P]rivate property shall not be taken or damaged for public use without just compensation." This provision should be construed as self-executing and as the sovereign's consent to a direct action by any person whose property is taken or damaged for public use without just compensation. To hold otherwise means that in cases of this kind the sovereign may take or damage private property for public use without paying therefor directly contrary to this constitutional provision. The constitution is the supreme law of the land. It is paramount to and takes precedence over statutory enactments. The state legislature has no authority to enact laws contrary to a constitutional provision and the courts are required to enforce its provision with or without legislative implementation. It certainly is an anomolous situation to hold, as the majority opinion does, that in this case this provision of the Constitution is a complete nullity merely because the legislature has failed to enact implementing legislation authorizing a direct suit to recover damages to property from a public use, when the legislature

1. See State by State Road Commission v. Fourth District Court, 1939, 94 Utah 384, 78 P.2d 502, and cases cited in notes 19 and 20 to my opinion in Springville Banking Co. v. Burton, 1960, 10 Utah 2d 100, 349 P.2d 157.

is powerless to so nullify such provision by direct enactment.[2]

(3) The holding of the prevailing opinion is contrary to our previous decisions which it does not purport to overrule:

Webber v. Salt Lake City,[3] was an action to recover damages to abutting property from a change in the grade of a street. A statute expressly authorized such action with a limitation statute requiring that such action be commenced within one year. The action was commenced after the year had expired and it was claimed that the action was not maintainable. We quoted Section 22 of Article I of our Constitution as herein previously quoted stating that it was concededly self-executing, and stated that "[T]he right to recover consequential damages for injury to private property by reason of making public improvements therefore does not rest upon section 282, supra, but is based upon the provision quoted from section 22 of article I of our Constitution." That case is not distinguishable from this case in any material particular. It affirms an award for consequential damages on the sole and only ground that Section 22 is self-executing and is contrary to the holding in the prevailing opinion.

Also in State by State Road Commission v. Fourth District Court[4] the State sought to enjoin further proceedings in the trial of another action pending in that court. The plaintiffs in the pending action were abutting landowners to a public highway on which the State proposed to construct a viaduct. They sought to enjoin such construction until they were compensated for the damages to their abutting lands which would result from such construction, or until eminent domain proceedings were instituted. We held that the plaintiffs in the pending action were entitled to the injunctive relief sought against the members of the State Road Commission and the construction contractor. In so holding we said:

"We think it is clear that the framers of the Constitution did not intend to give the rights granted by section 22, and then leave the citizen powerless to enforce such rights. * * *. (94 Utah 397, 78 P.2d 508)

* * * * * *

"The State Road Commission is * * * an agency of the State, and suit against it is suit against the State. Suit against the State cannot be maintained without its consent, and that consent is not ordinarily implied. It

---

2. See discussion of this question in my opinion in Springville Banking Co. v. Burton in Note 1.

3. Webber v. Salt Lake City, 1911, 40 Utah 221, 120 P. 503, 504, 37 L.R.A.,N.S., 1115.

4. State by State Road Commission v. Fourth District Court, note 1.

may be argued that by adopting the provisions of section 22 of article 1 of the Constitution, the State has impliedly granted consent to be sued in the case of a taking or damaging of private property for state use without compensation. Such a rule has been declared in at least one jurisdiction, Chick Springs Water Co. v. State Highway Dept., 159 S.C. 481, 157 S.E. 842. * * *. (94 Utah 398, 78 P.2d 508)

"We think if a case arises where there is no other method of enforcing a constitutional right except by suit against the State, then it must be considered that the State has given its consent to be sued in such a case. In this case, however, we hold that the Road Commissioners individually may be enjoined from proceeding in a manner forbidden by the Constitution—and that it is therefore unnecessary to permit suit against the State * * *." (94 Utah 399, 78 P.2d 509)

The only purpose or effect of that decision was to enjoin the State from proceeding with the viaduct project without arranging to compensate the abutting landowners for the damage from such public use of that property. Further, we approved the holding in the Chick Springs Water Company case by stating that if there was no other method of enforcing

that constitutional right except by a direct suit against the State, such consent would be implied. There, we approved the method of enforcing this constitutional provision claimed in that action. Direct recovery of damages for public use of private property was not sought in that action against the State, but to make sure that the decision could not be misunderstood, it was pointed out that where there is no other way to obtain such relief other than by direct suit, the State had by implication given its consent thereto. Under the prevailing opinion there is no other way in the present case to recover just compensation for the damage to plaintiffs' property. So that holding is contrary to the present decision, which denies the right of a direct suit against the State although it has conclusively precluded any other method of obtaining such relief.

(4) In none of the Utah cases cited in the prevailing opinion was the question of whether Article I, Section 22 is a consent to such a suit against the sovereign a determining factor.

Before discussing these cases, I will try to clarify my position because Mr. Justice Henriod in Note 9 in the Springville Banking Co. case seems to have misconceived my meaning. I do not now nor have I ever advocated the complete elimination of the sovereign immunity doctrine, either by

judicial decision or otherwise.[5] Nor do I claim that Article I, Section 22 has or should have that effect. I simply contend that such section by forbidding the taking or damaging of private property for public use without just compensation is a consent by the State and all its agencies and subdivisions to a suit for the recovery of such compensation. This provision clearly requires the taking or damaging of tangible private property, and that the public use must be intentional and not merely accidental or negligently caused.[6] So damages for personal injuries or from breach of contract and all damages except from an intentional public use are not included in such consent.

In Wilkinson v. State,[7] a landowner sued the State, the State Road Commission, its individual members and the State Engineer and his assistant for damages to his land from a flood, and the enlargement of an irrigation canal and diversion of some waters from their nature course. The trial court awarded damages to plaintiff purportedly not against the State, but directed payment from the State Reclamation Funds. This court reversed that award,

holding that the injuries were accidental, but that there was no pleading or proof of negligence for the flood was so unusually large that the injuries were unavoidable. It was further held that this award was in fact against the State, that the State cannot be sued without its consent, and there was no statutory or constitutional provision consenting to such suit. No mention was made of Article I, Section 22, but it is generally recognized that accidental or negligent injury is not a damage to private property for a public use.[8] So that case has no bearing on our problem.

Most of the other cases cited in the prevailing opinion also have no bearing on our problem. Thus, we allowed a suit under statutory consent by a road construction contractor against the State Road Commission for damages for breach of a contract,[9] but we denied a suit for a child against the school board to recover damages from personal injury through negligently maintaining an incinerator on the school property;[10] we denied the right of an abutting landowner to recover from the individual members of the State Road Com-

5. Springville Banking Co. v. Burton, note 1; Bingham v. Board of Education, 1950, 118 Utah 582, 223 P.2d 432.

6. See Springville Banking Co. v. Burton, both dissenting and prevailing opinions. Note 1, Hjorth v. Whittenburg, 121 Utah 324, 241 P.2d 907; Lund v. Salt Lake County, 58 Utah 546, 200 P. 510; Great Northern R. Co. v. State, 102 Wash. 248, 173 P. 40, L.R.A.1918E, 987.

7. Wilkinson v. State, 42 Utah 483, 134 P. 626.

8. See cases cited in note 6.

9. See Campbell Bldg. Co. v. State Road Comm., 95 Utah 242, 70 P.2d 857.

10. See Bingham v. Board of Education, note 5.

mission for damages from a State project which changed the grade of a highway.[11] This was of course not a suit against the State. And we denied the right of a person to sue the County for personal injuries from negligent maintenance of a golf course club house.[12] These cases have no bearing whatever on whether Section 22 of our Constitution is a consent by the State to a suit for the recovery of just compensation for taking or damaging of private property. In two other cases, one for injunctive relief [13] and the other for damages, all members of the court agreed that the damages claimed were noncompensable,[14] but the prevailing opinion added the unnecessary holding that such a suit could not be maintained on account of sovereign immunity. The decision in these two cases would have been the same as all members of the court agreed regardless of that doctrine.

(5) In my opinion the prevailing opinion is contrary to the great weight of authority and better reasoning. I have extensively set forth my views on this question in my dissent in the Springville Banking Company case,[15] which I will not repeat here.

(6) After extensive research on this problem I have yet to learn of one good reason why we should revert to the sovereign immunity doctrine in view of this constitutional provision. This is especially true in view of our previous positive decision to the contrary. Under the present decision I think the people of this State are in great need of a legislative enactment allowing such a suit against the State, and of a liberalization of the law in general where the doctrine of sovereign immunity applies. The need for such enactment is the same as the need for the eminent domain statute was before its enactment, except that since the enactment of the eminent domain statute, the problem does not arise so often. However, in cases where the State can get possession of private property, or can damage it for public use without resort to condemnation under the eminent domain statute, the damage and injustice to the private individual is just as great as it would be if the State could take private property by condemnation under the eminent domain statute for public use without just compensation. I realize and am thankful that some of the harshness and injustice of this type of holding may be alleviated by an application to the State Board of Examiners for

11. See Hjorth v. Whittenburg, note 6.
12. See Jopes v. Salt Lake County, 9 Utah 2d 297, 343 P.2d 728.
13. See Springville Banking Co. v. Burton, note 1.

14. See State v. Tedesco, 4 Utah 2d 31, 286 P.2d 785.
15. Springville Banking Co. v. Burton, note 1; see State ex rel. Morrison v. Thelberg, 87 Ariz. 318, 350 P.2d 988.

compensation. While I do not agree that this provision satisfies the requirement of the constitutional provision, yet I am happy that there is a possibility of some relief from the effects of this decision.