George A. KATSOS, Joey Y. Katsos, James A. Katsos, Dixie L. Katsos, Andrew A. Katsos and Helen L. Katsos, Plaintiffs,

v.

SALT LAKE CITY CORPORATION and Salt Lake City Airport Authority, Defendants.

Civ. No. C84–0245G.

United States District Court, D. Utah, C.D.

March 26, 1986.

Robert S. Campbell, Jr., E. Barney Gesas, Vincent C. Rampton, Salt Lake City, Utah, for plaintiffs.

Harold G. Christensen, George A. Hunt, Rodney R. Parker, Salt Lake City, Utah, for defendants.

## ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT

J. THOMAS GREENE, District Judge.

Defendants' Motion for Summary Judgment and Plaintiffs' Motion for Partial Summary Judgment regularly came on for hearing before the Court on February 24, 1986. Defendants were represented by Harold G. Christensen, George A. Hunt and Rodney R. Parker of the firm of Snow, Christensen & Martineau. Plaintiffs were represented by Robert S. Campbell, Jr., E. Barney Gesas and Vincent C. Rampton of the firm of Watkiss & Campbell. Plaintiffs' Motion to Strike was also presented. Extensive legal memorandums and exhibits had been lodged with the Court, and the matters were thoroughly and ably argued by Messrs. Christensen and Campbell and taken under advisement. The Court has reviewed the matters presented, and being fully advised, grants in part and denies in part defendants' Motion for Summary Judgment and denies plaintiffs' Motion for Partial Summary Judgment. A ruling on plaintiffs' Motion to Strike is unnecessary in view of the Court's ruling on the other motions. At the time of oral argument, counsel for plaintiffs requested leave to amend in order to assert claims for recovery for less than total taking with respect to any of the properties in question or otherwise. That motion is granted and plaintiffs are granted leave within twenty days from the date of this Order to file any desired amendments consistent with the rulings of law set forth herein.

*Background*

Review of the pleadings and affidavits presented in connection with these motions demonstrates the following undisputed facts:

Plaintiffs own six parcels of real property located immediately south of the Salt Lake City International Airport ("Airport"). The majority of plaintiffs' properties are zoned for agricultural purposes and used for agriculture and the residences of certain members of plaintiffs' family.[1]

The Airport maintains two principal runways. The westernmost runway, designated 16R–34L, runs north and south, and plaintiffs' properties are south of the end of this runway.

Pursuant to applicable FAA regulations, the Airport has established an "approach-departure zone" relative to this runway. The zone is an imaginary cone shaped airspace which narrows as it approaches the runway. This approach-departure zone includes airspace over a substantial portion of the plaintiffs' properties on a glide slope at altitudes under 500 feet.

The slope of descent for incoming flights from the south contemplates and requires use of airspare within the approach-departure zone less than 500 feet in altitude, and aircraft regularly overfly plaintiffs' properties within that zone at altitudes less than 500 feet.

Aircraft sometimes overfly other portions of plaintiffs' properties outside the approach-departure zone at altitudes less than 500 feet. All of the property is overflown at altitudes above 500 feet, particularly as to flight departures, with very substantial attendant noise and vibration.

In 1983, Salt Lake City enacted Salt Lake City Ordinance Bill No. 77, amending Ordinance § 51–11–19 and enacting § 52–11–19A. This ordinance categorizes real property near the airport into three zones. Each zone consists of properties which are subjected to levels of aircraft noise and vibration: Zone "A" the most severe; zone "B" very severe; and zone "C" moderate noise levels.

With the exception of seven acres of undeveloped land and two homes, all of plaintiffs' properties fall within zone "A". Under the Ordinance, such property cannot be further developed for residential purposes. Commercial development of the property requires that all structures incorporate at least 25 decibels of sound attenuation and include air circulation systems so that all doors can be kept closed year round. Further, the Ordinance requires that the landowner execute an avigation easement in which it is acknowledged that the property is subject to an "existing prescriptive avigation easement," and whereby the City is permitted to increase air traffic over the subject property without limitation as to frequency, altitude and kind of such air traffic.

*Disputed Issues of Fact*

Defendants concede that flights sometimes occur below the 500 foot level over part and perhaps the whole of plaintiffs' properties which are not in the approach-departure zone, but the extent and regularity of such flights is disputed.

The impact of noise and how it should be measured properly is in dispute as to flights above as well as below the 500 foot altitude.

The impact of frequency of flights, the total number apparently of which has decreased while commercial flights have increased over the years, is in dispute.

There appears to be a lack of agreement as to the relative percentage of use of the runway in question for departures to the south as compared with arrivals from the south within the approach-departure zone.

The extent to which aircraft approaching the runway from the south are required to remain within the approach-departure zone is at issue, and the extent of deviation from the established zone by general aviation aircraft and commercial aircraft is disputed.

1. One small segment is zoned B–3, permitting limited commercial development.

Factual disagreement appears to exist as to the impact of deregulation of the airline industry in 1978, the impact of establishment of Western Airlines hub operations at the Airport in May 1982, and the impact of enactment of the noise ordinance in 1983.

The question of whether and when the impact of flight and noise/vibration reached an intolerable level and as to which portions of the property, is in dispute.

The date or dates when the applicable statute of limitations began to run, and the totality of facts bearing thereupon, is in dispute.

The extent of diminution of value as to the various portions of plaintiffs' properties, and indeed, whether the property or any portion thereof has retained any reasonable value is disputed.

The aforesaid recitation of only some of the apparent factual disputes compels denial of the cross motions for summary judgment, except as to dismissal of the Third Claim for Relief, the § 1983 claim, which is discussed hereinafter.

Plaintiffs allege four causes of action. In Count one damages are sought for alleged taking of plaintiffs' property by the City and Airport Authority without due process of law and without just compensation in violation of the Fifth and Fourteenth Amendments. It is claimed that the taking was effected by low-level overflights and concommitant noise and vibration coupled with the enactment of Ordinance 51–11–19A. In Count two plaintiffs seek injunctive relief restraining low level overflights over the plaintiffs' properties. Count three sets forth a claim for violation of 42 U.S.C. § 1983, and Count four contains allegations of violation of Article I Section 22 of the Utah Constitution. Plaintiffs seek partial summary judgment on the theory that all of the properties, including especially those under the glide path below 500 feet, have been taken as a matter of law. Defendants seek summary judgment that plaintiffs' claims are time barred, that plaintiffs' taking claims must be limited to overflights at altitudes below 500 feet, that plaintiffs' claim under § 1983 is improper,

and that plaintiffs' claim under the Utah Constitution also is not properly before the Court. In addition, defendants argue that plaintiffs' sole remedy under the noise ordinance would be for a declaration that the ordinance is unconstitutional. We will address these issues below.

1. *Taking Issues Under the Fifth Amendment*

■ a. *Overflights under 500 feet within approach-departure corridor.* Flights so low and frequent as to constitute a direct and immediate interference with the enjoyment of the owner's land impose a servitude upon that land, and establish a constitutional taking of property in violation of the Fifth Amendment. *United States v. Causby*, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946), *Griggs v. Allegheny County*, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962). Congress has defined navigable airspace as "airspace above the minimum altitudes of flight as prescribed by regulations issued under this chapter, and shall include airspace needed to insure safety in take off and landing of aircraft." 49 U.S.C. § 1301(26) (1976). The current minimum prescribed by the Federal Aviation Administration ("FAA") is 500 feet over uncongested areas and 1000 feet over congested areas. 14 CFR § 91.79.

■ Defendants apparently do not dispute that the level and frequency of flights within the approach-departure zone are sufficiently low and frequent as they pass over plaintiffs' properties to constitute a taking under *Causby* and its progeny. It is acknowledged that an accurate description and delineation of properties actually taken would be necessary since the landowner would be required to transfer ownership thereof to the United States. The parties may be in substantial agreement as to the property thus affected, but defendants argue that plaintiffs' claims are time-barred. The Court considers that the statute of limitations claim presents questions of fact which must be resolved from all of the facts and circumstances, as is discussed hereinafter. The necessity for such factual

determination is fatal to plaintiffs' Motion for Partial Summary Judgment.

b. *Overflights below 500 feet outside the approach-departure corridor.* Plaintiffs contend that some or all of their remaining properties not directly beneath the approach-departure corridor have also been taken as a result of low-level overflights. This issue is directly disputed by defendants and presents material issues of fact. Therefore, summary judgment as to those properties is inappropriate.

■ c. *Overflights over 500 feet in height.* Defendants seek dismissal of any claim asserted by plaintiffs for overflights in excess of 500 feet as not cognizable under *Batten v. United States,* 306 F.2d 580 (10th Cir.1962). *Batten* held that property adjacent to an airfield was not "taken" by reason of noise and vibration alone. The *Batten* Court did not confront factors such as extensive overflights above the 500 foot level, with intrusions also below the 500 foot level, in conjunction with unreasonable noise and vibration. This Court considers that where there is direct, immediate and substantial interference with the beneficial use and enjoyment of properties, involving such things as high noise and vibration levels, and extensive overflights, there could be a taking. The totality of facts and circumstances would be determinative. See *Branning v. United States,* 654 F.2d 88, 228 Ct.Cl. 240 (1981).

2. *Taking Issues Under the Salt Lake City Airport Zoning and Noise Ordinance*

In 1983, Salt Lake City enacted an extensive zoning ordinance, Salt Lake City Rev Ord 51–11–19A. Plaintiffs claim that the ordinance is so extensive that it constitutes a "taking by ordinance regulation." Plaintiffs also contend that the joint impact of enactment of the Ordinance and the frequency of low flying aircraft became so intense in 1983 as to amount to a taking. Defendants urge that the proper remedy for the alleged grievances would be for declaratory relief attacking the constitutionality of the ordinance, and that mere

diminution of value would be insufficient to demonstrate an inappropriate use of the police power amounting to a taking by regulation.

■ Plaintiffs have not presented any evidence that they have submitted a plan for development of their property as permitted by the Ordinance. Accordingly, it is not conclusively apparent whether plaintiffs will be denied all reasonable beneficial use of their properties, so any claim that the Ordinance *as applied* constitutes a taking is premature. *Agins v. Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980); *Williamson Co. Regional Planning v. Hamilton Bank,* — U.S. ——, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985).

■ The basic position urged by plaintiffs is that enactment of the ordinance on its face constitutes a taking. Plaintiffs urge this position either *per se* or in tandem with the increased overflights in 1983 occasioned by the Western Airlines hub operations and other factors. The Ordinance requires as a prerequisite to development execution of an acknowledgement of an *existing* avigational easement. Accordingly, the Ordinance on its face presents a material issue of fact, i.e. whether and to what extent a prescriptive common law easement might be said already to exist as to some or all of the property. As to the alleged conjunction of the Ordinance and substantially increased air traffic, questions of fact concerning the impact upon some or all of the property, and when if ever this occurred with sufficient intensity as to constitute a taking, would have to be determined. Most importantly, it is not apparent from the face of the Ordinance, or as it might be applied here, that it denies plaintiffs all reasonable uses of their property or the extent of plaintiffs' damages. As was pointed out by the Tenth Circuit Court of Appeals in *C.F. Lytle Co. v. Clark,* 491 F.2d 834, 838 (10th Cir.1974):

The due process and just compensation clauses of the state and federal constitutions do not require that zoning ordi-

nances permit a landowner to make the most profitable use of his property. For there to be a taking the landowner must show he has been deprived of all reasonable uses of his land.

Diminution in property value, standing alone, does not establish a taking. *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). In *Williamson County Regional Planning Commission v. Hamilton Bank,* supra, the Court grappled with an alternative claim that there had been a deprivation of property without due process under the Fourteenth Amendment, or a taking under the Just Compensation Clause of the Fifth Amendment. The Court held that under either theory the claim was premature, but noted that the difficult problem is how to define when a regulation "goes too far," i.e. "... how to distinguish the point at which regulation becomes so onerous that it has the same effect as an appropriation of the property through eminent domain or physical possession." [2]

It is not apparent at this time whether the Salt Lake City Airport Ordinance, "goes too far" either facially or as applied, so as to constitute a taking of some or all of the properties. Determination of the applicability and impact of the Ordinance must await further development of facts.

3. *Claims under Utah Constitution*

In the Fourth Claim for Relief plaintiffs assert a claim for taking of property without just compensation in violation of Article I, Section 22 of the Utah Constitution. Article I, Section 22 of the Utah Constitution contains the taking property and just com-

pensation provisions identical to those contained in the Fifth Amendment. In *Fairclough v. Salt Lake County,* 10 Utah 2d 417, 354 P.2d 105 (1960), relied on by defendants here, the Utah Supreme Court held that the State cannot be sued without its consent. In *Fairclough* the plaintiffs sought compensation from Salt Lake County for diminished value to real property caused by a state roadwork project. The Utah Supreme Court, assuming the project was a reasonable and necessary exercise of the police power, made the following statement:

> ... consistently and historically we have ruled that the state may not be sued without its consent; taken the view that Art. I, Sec. 22 of our Constitution is not self-executing, nor does it give consent to be sued, implied or otherwise, and that to secure such consent is a legislative matter, a principle recognized by the legislature itself. *Id.,* 354 P.2d at 106.

■ Defendants' primary reliance appears to be on the statement by the Utah Supreme Court that the Utah Constitution is not "self-executing," but it is evident from the case that the court was most concerned with the fact that the state had not given its consent to be sued. The statute which arguably waives sovereign immunity was enacted after *Fairclough.*[3] Moreover, it is apparent that actions for inverse condemnation are recognized and cognizable in the State of Utah without enabling legislation. See *Gray v. Salt Lake City,* 44 Utah 204, 138 Pac. 1177 (1914). Defendants' motion for summary judgment as to this claim is denied.

---

**2.** 105 S.Ct. at 3124. Mr. Justice Holmes had first postulated the notion that excessive regulation can amount to a "taking":

> The general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking.

*Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922). It is not absolutely clear whether Justice Holmes was really addressing the Just Compensation Clause or the excessive use of police power since although he refers to the possibility of a "taking,"

he framed the question presented as "whether the police power can be stretched so far."

**3.** We question whether the defendants are cloaked with governmental immunity in operating the airport. *See Standiford v. Salt Lake City Corp.,* 605 P.2d 1230 (Utah 1980) (creating new standard for determining governmental immunity) and *Johnson v. Salt Lake City Corp.,* 629 P.2d 432 (Utah 1981). We do not reach that question here, however, because even if the defendants were entitled to sovereign immunity it appears that it was waived under Utah Code Ann. § 63-30-5 et seq.

### 4. *Civil Rights Cause of Action*

 It is the view of this Court that plaintiffs' claim under 42 U.S.C. § 1983 does not lie and in all events is premature. In *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, supra, the Court observed that the Fifth Amendment does not require that just compensation be paid in advance of or contemporaneously with a taking, and that all that is required is an adequate process and avenue for obtaining compensation. Plaintiffs have failed to show that actions otherwise available, including this action without the § 1983 claim, would not provide them with an adequate remedy. Indeed, plaintiffs affirm, and this Court agrees, that the Utah Constitution and laws afford a remedy for pursuit of inverse condemnation claims. The United States Supreme Court noted in *Williamson* that state procedures which permit a property owner to obtain just compensation must be utilized before bringing a § 1983 claim. *See* fn. 13 at 105 S.Ct. 3121. Plaintiffs correctly have argued that procedures which allow a property owner to obtain a declaratory judgment need not be first exhausted; but since no constitutional violation occurs under the Fifth Amendment until just compensation has been denied, state procedures that allow a property owner to obtain compensation for a taking do need to be exhausted. The Court went on to say in *Williamson* that:

> A second reason the taking claim is not yet ripe is that respondent did not seek compensation through the procedures the State has provided for doing so. The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation.... If the government has provided an adequate process for obtaining compensation, and if resort to that process "yield[s] just compensation," then the property owner "has no claim against the Government for a taking." ... if a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensa-

tion Clause until it has used the procedure and been denied just compensation. 105 S.Ct. at 3121.

Whether by direct assertion of violation of the Fifth Amendment of the United States Constitution—which avenue for relief has been here asserted and it clearly permissible in that the Just Compensation Clause is self executing, *United States v. Clarke*, 445 U.S. 253, 100 S.Ct. 1127, 63 L.Ed.2d 373 (1980)—or by recourse to state procedures—which avenue for relief is also here asserted,—it appears that plaintiffs have access to adequate procedures calculated to provide just compensation without assertion of the § 1983 claim. Accordingly, defendants' motion for summary judgment as to the § 1983 claim is granted and the Third Claim for Relief is dismissed.

### 5. *Salt Lake City Airport Authority*

 It is the view of this Court that the Authority is a proper party and not subject to dismissal here. We consider that the Authority has the power of eminent domain under the broadly worded Statute which established it. Utah Code Ann.1953, § 2–5–3.

### 6. *Statute of Limitations*

Defendants maintain that Utah Code Ann. § 78–12–25(2), a four-year limitation period which applies when no other statute directly applies, is the applicable statute of limitations. The Court disagrees that this four-year statute is applicable to plaintiffs' taking claim. The most analogous statute of limitations under Utah law is the Seven (7) year statute provided in Utah Code Ann. § 78–12–25.5. See *Salt Lake Investment Co. v. Oregon Shortline Railroad Co.*, 46 Utah 203, 148 Pac. 439 (1915).

The running of the statute is a question of fact to be determined from all of the facts and circumstances. Some of the factors of relevance are the regularity and frequency of low altitude flights, the number of such flights, the introduction of commercial flights and the frequency thereof, noise levels and how to measure them, the substantiality of interference, the number and percentage of flights landing from the

south, night flights, vibration, the level of tolerance, and the impact of deregulation, the Western Airlines operations, and the enactment of the Salt Lake City noise ordinance. The dimensions of the properties taken and whether the taking embraces the fee or an avigational easement as to particular properties are questions of fact.

■ Even if plaintiffs' claim is barred in part by the applicable statute of limitations, plaintiffs may still be entitled to compensation for an incremental taking as a result of increased commercial air traffic and the concommitant noise, vibration and frequency of overflights. In *Davis v. United States*, 295 F.2d 931, 155 Ct.Cl. 418 (1961), the defendant argued that plaintiff's taking claim was barred by the applicable statute of limitations because plaintiff's property was overflown by B–36 bombers well beyond the limitation period. When the B–36 bombers were supplanted by B–52s plaintiff brought an inverse condemnation claim. The Court rejected the statute of limitations as a defense, and made the following observation:

> ... even if it could be said that a taking occurred in November 1951 when the B–36 bombers commenced flying over plaintiffs' land it certainly was at most only a partial taking and *not such a taking* as occurred when the B–52 flights commenced.... [295 F.2d at 933, 155 Ct.Cl. at 421.

As in *Davis*, plaintiffs here assert that even though their properties have long been subject to overflight by various kinds of aircraft, only recently has the presence of large, commercial jets become so frequent as to constitute a taking. *See, e.g., Avery v. United States*, 330 F.2d 640, 165 Ct.Cl. 357, (1964); *Klein v. U.S.*, 152 Ct.Cl. 221 (1961), *cert. denied*, 366 U.S. 936, 81 S.Ct. 1661, 6 L.Ed.2d 847.

We consider that material issues of fact exist as to the applicability of the statute of limitations, and therefore deny defendants' motion on that issue.

### 8. *Damages*

■ Defendants have asked the Court for guidance as to how damages will be treated at the trial phase. This matter was not fully addressed by the parties and must be dealt with more fully in the future. Except as to plaintiffs' properties directly under and within the approach-departure zone involving substantial flights below 500 feet as to which the statute of limitations has not run, which flights are so low and frequent as to constitute a direct and immediate interference, etc., issues of diminution of value must be adjudicated. Even as to such properties there may be incremental taking issues of fact to be determined. The Court considers the measure of damages as to property taken to be as is set forth in *United States v. Causby:*

> It is the owner's loss, not the taker's gain, which is the measure of the value of the property taken.... Market value fairly determined is the normal measure of the recovery.... And that value may reflect the use to which the land could readily be converted, as well as the existing use. Ibid, 328 U.S. at 261, 66 S.Ct. at 1065–66.

For the reasons set forth above, plaintiffs' Motion for Summary Judgment is denied, and defendants' Motion for Summary Judgment is denied, except that it is granted as to the Third Claim for Relief.

IT IS SO ORDERED.