FARMERS NEW WORLD LIFE
INSURANCE COMPANY,
Plaintiff and Appellant,

v.

BOUNTIFUL CITY; McNeil Construction; Sharp, Sorensen and Associates; Interwest Construction; Fashion Village Shopping Center, a partnership; The Fashion Village Group; Merrill W. Beck; William Compton; and John Does 1 through 5, Defendants and Appellees.

No. 890012.

Supreme Court of Utah.

Dec. 31, 1990.

James L. Christensen, Paul D. Newton, Mark J. Morrise, Salt Lake City, for Farmers New World Life Ins. Co.

Stanley J. Preston, Allen L. Larson, Robert C. Keller, Jody K. Burnett, Salt Lake City, for Bountiful City.

Gregory J. Sanders, J. Mark Whimpey, Salt Lake City, for McNeil Const.

Keith W. Meade, Salt Lake City, for Sharp, Sorensen & Associates.

Robert F. Babcock, Salt Lake City, for Interwest Const.

W. Durrell Nielsen, Salt Lake City, for Fashion Village Group.

Darwin C. Hansen, Salt Lake City, for Merrill W. Beck.

DURHAM, Justice:

Farmers New World Life Insurance Company (Farmers) brought this action against Bountiful City (the City) and a number of other defendants to recover damages to a commercial mall owned by Farmers. The original complaint included claims against the City for (1) breach of contract, and (2) inverse condemnation under article I, section 22 of the Utah Constitution. The City moved for summary judgment on all claims, and the trial court granted that motion (the first ruling). Farmers then amended its complaint, adding inverse condemnation claims against Bountiful under the fifth amendment of the United States Constitution. The City moved to dismiss the amended complaint, and the trial court again granted the mo-

tion (the second ruling), treating the motion to dismiss as a motion for summary judgment pursuant to rule 12(b) of the Utah Rules of Civil Procedure. Farmers appeals both the first and second rulings.

Farmers is the owner of a commercial mall located in Bountiful. Bordering the south wall of the mall is a natural waterway known as Mill Creek. In 1983, after a period of flooding, mall representatives requested that the City make improvements to the creek channel at the mall site in order to improve the flood capacity of the creek. In 1985, the City obtained from Farmers a deed granting an easement that allowed the City to construct and maintain a concrete culvert. The City contracted for the design, construction, and financing of the culvert and funded the project with county flood control funds as well as state disaster relief funds. Diversion of the creek during the construction of the culvert caused physical damage to the mall due to a loss of lateral support and water seepage.

In reviewing the trial court's rulings, we must review the facts and inferences in the light most favorable to Farmers. Because summary judgment is granted as a matter of law, we can reappraise the trial court's legal conclusions. *Atlas Corp. v. Clovis Nat'l Bank*, 737 P.2d 225, 229 (Utah 1987).

## I. INVERSE CONDEMNATION CLAIM UNDER ARTICLE I, SECTION 22

Article I, section 22 of the Utah Constitution provides, "Private property shall not be taken or damaged for public use without just compensation." Prior to the construction of a public improvement, property can be taken and the owner compensated under the eminent domain power authorized by Utah Code Ann. §§ 78–34–1 to –20. In the event private property is taken or damaged for public use *without* a formal exercise of the eminent domain power, the property owner may bring an inverse condemnation action under article I, section 22 to recover the value of the property.[1] For purposes of that constitutional

---

1. Recently, in *Colman v. Utah State Land Board*, 795 P.2d 622, 635 (Utah 1990), we held that article I, section 22 was self-executing. *Accord Hamblin v. City of Clearfield*, 795 P.2d 1133

provision, an inverse condemnation action requires (1) property, (2) a taking or damages, and (3) a public use.

### A. Nature of Property

██ Farmers has alleged damage to a building which it owns. In *Lund v. Salt Lake County*, 58 Utah 546, 200 P. 510 (1921), considering an inverse condemnation claim for the contamination of a pond and the destruction of fish, this court stated, "The kinds of property subject to the [eminent domain] right ... is practically unlimited." *Id.*, 200 P. at 512. Under general principles of eminent domain, "property" includes but is not limited to land and improvements subject to the substantive law of real property. 2 *Nichols on Eminent Domain*, § 5.45 (3d ed. 1990). Buildings attached to land are considered "property" for which the taking or damaging must be paid. *Id.* In *O'Neill v. San Pedro, L.A. & S.L.R.R.*, 38 Utah 475, 114 P. 127 (1911), the court indicated that article I, section 22 damages property included injuries to a house caused by the vibrations, smoke, and cinders of a nearby railroad. Here, assuming that Farmers has a legal right in the building it says was damaged, Farmers has alleged a property interest protected by article I, section 22 of the Utah Constitution.

### B. Existence of Taking or Damage

██ In the usual eminent domain setting, property is completely taken or destroyed for a public use, rendering it valueless to the owner. In addition, however, "severance damages" may be recoverable where property not actually taken is damaged by the construction or use of the improvement. *See* Utah Code Ann. § 78-34-10(3). Generally, all *unavoidable* injuries arising out of the proper construction of a public use which directly affect the market value of the abutting property may be considered in calculating damages. *See Morris v. Oregon Short Line R.R.*, 36 Utah 14, 102 P. 629, 631 (1909).

Farmers alleges damages which include (1) loss of income, (2) diminution in value of the mall, and (3) cost of repair to the mall's roof, floors, walls, plumbing, sewer, and fill. These damages were allegedly caused by a loss of lateral support and the seepage of water through spaces in the wall panels.

In *Board of Education v. Croft*, 13 Utah 2d 310, 373 P.2d 697 (1962), this court struck down a property owner's damage award, holding that an owner is entitled to compensation only for injuries that "would be actionable at common law" or for injuries where there is "a definite physical injury cognizable to the senses with a perceptible effect on the present market value." *Id.* at 699. The court went on to state that the requisite physical injury may include "destroying lateral supports" and "running surface waters onto adjacent lands." *Id.*

Recently, in *Rocky Mountain Thrift Stores, Inc. v. Salt Lake City Corp.*, 784 P.2d 459 (Utah 1989), this court denied a business owner's inverse condemnation action against a city for injuries resulting from the city's interference with access to the owner's store. The damages occurred as a result of the operation and maintenance of a drainage system during and after a flood. This court held that article I, section 22 did *not* apply because the damages resulted from a "temporary, one-time occurrence" rather than a "permanent, continuous, or inevitably recurring interference with property rights." *Id.* at 465.

Under the foregoing definitions, damages protectible under article I, section 22 must be physical and permanent, continuous, or recurring. The diminution of value and cost of repairs to the mall which Farmers has alleged constitute damages within the guarantee of article I, section 22.

### C. Presence of a "Public Use"

The Utah legislature has authorized the state land board to construct any projects it

(Utah 1990); *Hansen v. Salt Lake County*, 794 P.2d 838 (Utah 1990). An inverse condemnation claim under that constitutional provision is self-executing and not subject to the limitations

found in the Governmental Immunity Act. *See Colman v. Utah State Land Bd.*, 795 P.2d 622, 630-35 (Utah 1990).

considers necessary for the control or prevention of floods, granting that agency eminent domain power to acquire lands necessary for that purpose. Utah Code Ann. § 65–1–75. This authorization is based on the concept that a taking of private property in support of a flood control program is for a public use. 2A *Nichols on Eminent Domain*, § 7.41 (3d ed. 1990). It is universally conceded that the government has the power to take private property in the interest of the public health and safety, *id.* at § 7.36, and flood control falls within this governmental purpose. This court has impliedly recognized flood control as a public use for purposes of article I, section 22. *See Colman v. Utah State Land Bd.*, 795 P.2d 622 (Utah 1990); *Rocky Mountain Thrift Stores, Inc. v. Salt Lake City Corp.*, 784 P.2d 459 (Utah 1989).

 In the instant case, the City's construction of the culvert was in support of a flood control program and therefore was a public use within the meaning of article I, section 22. All damages *necessarily* resulting from the construction of that improvement and not otherwise paid for would be recoverable in an inverse condemnation action as damages incurred for a public use under the terms of the constitutional provision. In Utah, however, under the statutes and case law, damages which are not a direct and necessary consequence of the construction or operation of a public use are not recoverable in an inverse condemnation action.

In 1987, after this cause of action arose, the legislature enacted Utah Code Ann. § 63–30–10.5, authorizing inverse condemnation actions against the government. That statute waives governmental immunity for the taking or damaging of private property without just compensation and provides for the assessment of compensation and damages under title 78, chapter 34 (enacted prior to this action). *See* Utah Code Ann. § 63–30–10.5. Title 78 provides that property taken must be "necessary" to a use authorized by law. *Id.* at § 78–34–4. That title further provides that severance damages are to be assessed in situations where property not actually taken *"will* be

damaged by the construction of the proposed improvement." *Id.* at § 78–34–10(3) (emphasis added). The use of the words "necessary" and "will" in the statute limits its applicability to those damages which are anticipated prior to the condemnation and are an unavoidable consequence of the construction of the improvement. Avoidable injuries not directly resulting from the construction or operation of a public improvement are not within the statute's protection. *See Thomas E. Jeremy Estate v. Salt Lake City*, 87 Utah 370, 49 P.2d 405, 407 (1935) ("Damages arising out of the carelessness or negligence or indifference in the construction of a utility upon land taken for public use are not damages contemplated by the statutes as recoverable under the principles of law pertaining to eminent domain proceedings.").

Consistent with the policy recently expressed by the legislature, this court has in the past limited damages recoverable under the Utah Constitution's eminent domain provision to those injuries which are the direct and unavoidable consequence of the construction or use of the improvement. Other damages, it has been held, are not incurred "for a public use" and are therefore outside the contemplation and meaning of article I, section 22. We briefly review that precedent.

In *Morris v. Oregon Short Line Railroad*, 36 Utah 14, 102 P. 629 (1909), this court considered an article I, section 22 claim by a property owner for damages arising as a result of the construction and operation of a railroad on abutting land. The court stated that in such a case, "everything which arises out of the proper construction and proper operation of the railroad which directly affects the salable value of the abutting property may ordinarily be considered as elements in assessing damages." *Id.* 102 P. at 631. On similar facts, in *O'Neill v. San Pedro, L.A. & S.L. Railroad*, 38 Utah 475, 114 P. 127, 130 (1911), this court held that in an eminent domain setting under the state constitution, recovery is allowed only for injuries which necessarily arise from the "proper and careful" operation of the improvement. Any damages arising from the railroad's

negligent operation of its trains were recoverable only in a negligence action.

In *Utah Lake Irrigation Co. v. Jensen*, 49 Utah 19, 161 P. 677 (1916), an irrigation company condemned land for a canal. After construction, the property owner sought to recover damages for injuries caused by the seepage of water from the canal. The parties agreed that the property owner was not entitled to recover damages for injuries resulting from improper or negligent construction or operation of the canal. The question in the case was, rather, whether the seepage occurred because of negligence or, instead, was the necessary result of a properly constructed and operated canal. That determination, the court held, was not a question of law and depended on the particular conditions and facts of the case. *Id.* at 678.

In *Lund v. Salt Lake County*, 58 Utah 546, 200 P. 510 (1921), a property owner sought to recover damages for injury to fish ponds and the destruction of fish caused by contaminated water released into the ponds by Salt Lake County. The court denied the inverse condemnation claim, holding that "the damages for which compensation is allowed under article I, § 22, of the state Constitution are such as are the direct consequence of the lawful exercise of the right of eminent domain, and ... ordinarily such damages are unavoidable." *Id.* 200 P. at 513. The court found that the property was not taken "for a public use" for purposes of the constitutional provision. *Id.* at 513.

Finally, in two separate opinions Justice Wade, after arguing that article I, section 22 was self-executing, wrote that inverse condemnation damages are limited to those necessarily arising out of the public use. In *Springville Banking Co. v. Burton*, 10 Utah 2d 100, 349 P.2d 157 (1960), Justice Wade wrote that such damages must "grow out of" a public use rather than being merely the result of a negligent or wrongful government act. *Id.* 349 P.2d at 166 (Wade, J., concurring). That same year, in *Fairclough v. Salt Lake County*, 10 Utah 2d 417, 354 P.2d 105 (1960), he noted that article I, section 22 "clearly requires the taking or damaging of tangible private property, and that the public use must be intentional and not merely accidental or negligently caused." *Id.* 354 P.2d at 110 (Wade, J., dissenting) (footnote omitted).

██ In this case, reviewing the facts and inferences in the light most favorable to Farmers, we conclude that the trial court properly granted summary judgment as to Farmers' inverse condemnation claim against the City under article I, section 22. There is no evidence that the injuries incurred by Farmers were unavoidable or necessary to the construction or use of the culvert. It would be inconsistent with the language of the state constitution, the policy expressed in the current eminent domain statute,[2] and Utah case law to allow recovery under eminent domain principles for indirect, avoidable injuries which provide no benefit to the public. Farmers' recovery, if there is to be one, must be under another theory.

██ The trial court incorrectly implied that intent is an element of an inverse condemnation action. Intent is not an element of such an action, and any indication to that effect in our prior rulings should be disregarded. Although the government's lack of intent to cause injuries may be used as persuasive evidence that the injuries were unnecessary to the public use and/or avoidable, the presence or absence of intent is not dispositive on the subject of the nature of the injuries.

In the instant case, the trial court correctly stated that an inverse condemnation action does not "extend to actions arising out of negligently tortious conduct." The question of whether injuries are an avoidable or unavoidable consequence of construction is one of fact. *See Utah Lake Irr. Co. v. Jensen*, 49 Utah 19, 161 P. 677, 678 (1916).

---

**2.** We acknowledge that the statute is inapplicable to this case and cite it only as a reflection of current legislative views on public policy.

## II. FIFTH AMENDMENT CLAIMS

In its first amended complaint, Farmers asserts several causes of action against the City under the fifth amendment of the United States Constitution. The takings clause of the fifth amendment provides, "[P]rivate property [shall not] be taken for public use, without just compensation." This language differs slightly from the corresponding provision in the Utah Constitution, which prohibits the taking *and damaging* of private property without just compensation. Utah Const. art. I, § 22. Under the facts of this case, however, the result is the same under both constitutional provisions.

Under the United States Supreme Court's interpretation of the fifth amendment, a "taking" does not require complete destruction of the value of the property. In *United States v. Cress*, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746 (1916), the Court allowed property owners to recover fifth amendment compensation for a depreciation in value to their lands and water rights as a result of the government's construction and maintenance of locks and dams on a river. The Court stated: "[I]t is the character of the invasion, not the amount of damage resulting from it, so long as the damage is substantial, that determines ... whether it is a taking." *Id.* at 328, 37 S.Ct. at 385. Because there was a direct invasion of the property and "inevitably recurring" flooding, recovery was allowed. *Id.*

In *Sanguinetti v. United States*, 264 U.S. 146, 44 S.Ct. 264, 68 L.Ed. 608 (1924), a canal constructed and operated by the government was insufficient to carry away flood waters. As a result, the canal overflowed and damaged the abutting property owners' trees, crops, and land. The Court denied compensation under the takings clause, stating: "[I]n order to create an enforceable liability against the government, it is, at least, necessary that the overflow be the direct result of the structure, and constitute an actual, permanent invasion of the land, amounting to an appropriation of, and not merely an injury to, the property." *Id.* at 149, 44 S.Ct. at 265. The Court noted, "If the case were one against a private individual, his liability, if any, would be in tort." *Id.* at 150, 44 S.Ct. at 265.

The Court's holdings in *Sanguinetti* and *Cress* have been applied more recently by other federal courts. In *National By-Products, Inc. v. United States*, 405 F.2d 1256, 186 Ct.Cl. 546 (1969), a property owner was denied compensation under the fifth amendment for flooding caused by the overflow of a government-constructed levee. In that case, the court of claims found that the floods were a result of unique physical conditions and were not inevitably likely to recur. *Id.* 405 F.2d at 1274. Echoing the Supreme Court in *Sanguinetti*, the court stated, "The essential inquiry is whether the injury to the claimant's property is in the nature of a tortious invasion of his rights or rises to the magnitude of an appropriation of some interest in his property permanently to the use of the Government." *Id.* 405 F.2d at 1273–74. The court of claims and other federal courts have applied the same reasoning in a number of subsequent cases involving damage from the overflow and seepage of water. *See, e.g., Baird v. United States*, 5 Cl.Ct. 324 (1984); *Berenholz v. United States*, 1 Cl.Ct. 620 (1982), *aff'd*, 723 F.2d 68 (Fed.Cir.1983); *Miller v. United States*, 583 F.2d 857 (6th Cir.1978); *Hartwig v. United States*, 485 F.2d 615, 202 Ct.Cl. 801 (1973); *Harris v. United States*, 467 F.2d 801 (8th Cir.1972), and cases cited therein.

█ In the instant case, Farmers alleges a taking by virtue of the City's diversion of Mill Creek and the resulting seepage. That claim may not be sustained under the foregoing cases, all of which specifically treat the issue of damage to property caused by water. In addition, Farmers seeks fifth amendment compensation for damage caused by the City's unreasonable removal of lateral support, the City's intentional and deliberate interference with Farmers' use of its property and impairment of the value of the property, and the City's failure to prevent or remedy the tortious acts of the contractor. Although not specifically involving damages caused by water, Farmers' additional claims can

also be denied under the principles expressed in the foregoing cases.

All of the damages that Farmers has alleged are "in the nature of a tortious invasion" of its rights rather than rising "to the magnitude of an appropriation of some interest in [its] property permanently to the use of the Government." *National By–Products, Inc. v. United States,* 405 F.2d at 1273–74. In this case, the "character" of the damages does not meet the criteria established by the Supreme Court as necessary to a fifth amendment taking. In the language of the Court in *Sanguinetti,* the damages alleged by Farmers are not the "direct result of the structure," they do not "constitute an actual permanent invasion of the land," nor do they amount to an "appropriation" of Farmers' property interest. *Sanguinetti v. United States,* 264 U.S. at 149, 44 S.Ct. at 265.

The injuries Farmers seeks to recover are properly characterized as tortious and thus do not have constitutional stature under the fifth amendment. The trial court, therefore, properly granted the City's motion to dismiss Farmers' inverse condemnation claims under the United States Constitution. Even reviewing the facts and inferences in the light most favorable to it, Farmers is not entitled to relief under the fifth amendment of the federal constitution.

## III. CONTRACT CLAIM

██ Although flood control is clearly a public use, the construction of the culvert in the instant case was not conducted pursuant to the City's eminent domain power. Rather, Farmers and the City entered into a right-of-way agreement for a creek easement "for the purpose of digging, laying concrete, connecting to and maintaining, cleaning and operation [sic] a creek and drainage facility." Farmers claims that the agreement was a contract under which the City expressly and impliedly agreed not to abuse the easement or unreasonably interfere with Farmers' right to use the premises. We agree with Farmers' assertion that the City does owe certain obligations to Farmers under the contract and under Utah law.

In denying that it had any obligations to Farmers under the agreement, the City points out that it did not sign the document. It did, however, accept and use the easement, and acceptance makes a written contract containing a grant binding upon the grantee. *Bracklein v. Realty Ins. Co.,* 95 Utah 490, 80 P.2d 471, 477 (Utah 1938). In addition, the agreement recites that it was entered into "for valuable consideration." By virtue of the consideration transferred and the City's acceptance of the easement, enforceable contract rights and remedies were formed. The resulting contract falls within the waiver of governmental immunity for contractual obligations. *See* Utah Code Ann. § 63–30–5.[3] Having determined that a contract exists, we examine the nature of the respective rights and duties of the parties.

In *Thomas E. Jeremy Estate v. Salt Lake City,* 87 Utah 370, 49 P.2d 405 (1935), a property owner sought recovery under eminent domain principles for damages arising from the deposit on his property of material excavated during the construction of a canal. The landowner had granted the city a right-of-way for the construction and use of the canal. Included in the contract was a covenant by the city not to damage the adjoining property. This court denied recovery, stating that as a basic principle of contract law, in the absence of language to the contrary the grantor was compensated for the foreseeable damages by the consideration recited in the contract. *Id.* 49 P.2d at 406–07. This court presumed that

---

**3.** We note that this court has recently held in *Hansen v. Salt Lake County,* 794 P.2d 838 (Utah 1990), that the second paragraph of section 63–30–3 of the Utah Governmental Immunity Act does not grant absolute immunity to governmental entities for activities related to flood control. We held that the various exceptions to immunity invoked by the first sentence of the first paragraph of section 63–30–3 are equally available for claims arising out of flood control activities. *Hansen,* 794 P.2d at 844–46; *accord Hamblin v. City of Clearfield,* 795 P.2d 1133 (Utah 1990). Those exceptions include the waiver of governmental immunity for contractual obligations under section 63–30–5.

the consideration had been accepted by the grantor as the reasonable value of (1) the right granted and (2) the reasonably foreseeable damage done to the remaining land and improvements by the granting of the right-of-way and its use and maintenance. *Id.* at 406.

 In the instant case, the agreement expressly reserves to Farmers the right "to fully use" the premises for all purposes except that for which the easement was granted. The agreement does not, however, contain an express covenant by the City to compensate Farmers for damages incurred in the construction or use of the culvert, even though at the time of contracting, certain damages were a foreseeable and necessary result of the granting of the easement. Under *Jeremy*, the consideration recited in the agreement is therefore presumptive compensation for those damages so long as they were reasonable. Farmers, however, would be entitled to compensation for "unreasonable" injuries. This is consistent with Utah case law.

Utah law provides that the rights of the dominant owner of an easement are impliedly limited by the rights of the servient owner. *Big Cottonwood Tanner Ditch Co. v. Moyle,* 109 Utah 213, 174 P.2d 148, 158 (Utah 1946). "[T]he use of an easement must be as reasonable and as little burdensome to the servient estate as the nature of the easement and its purpose will permit." *Id.* (quoting *Jenkins v. Depoyster,* 299 Ky. 500, 186 S.W.2d 14, 15 (1945)). The servient owner may recover damages for those injuries which are "over and above those embraced within the framework of the easement itself." *Big Cottonwood,* 174 P.2d at 158. In such a case, the record must show that the dominant owner's exercise of the easement is "unreasonable in that it will unnecessarily damage the servient estate[ ]." *Id.* at 160; *see also Salt Lake City v. J.B. & R.E. Walker, Inc.,* 123 Utah 1, 253 P.2d 365 (1953); *Stevens v. Bird-Jex Co.,* 81 Utah 355, 18 P.2d 292 (1933).

The City's right to use its easement to the detriment of Farmers' estate did not include unforeseeable, unreasonable damages over and above those necessary to use the easement for the purposes for which it was granted. The City is contractually obligated to compensate Farmers for those damages and cannot invoke governmental immunity because it was waived under Utah Code Ann. § 63-30-5. The determination of the unreasonableness of the City's actions is a question of fact, *Big Cottonwood,* 174 P.2d at 159, and the trial court's summary judgment on Farmers' contract claims against the City was improper.

The trial court's order of summary judgment on the contract claims is reversed, and this case is remanded for a trial on those claims.

HALL, C.J., HOWE, Associate C.J., and ZIMMERMAN, J., concur.

STEWART, J., concurs in the result.